UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| PETCO PETROLEUM CORPORATION and BERGMAN PETROLEUM CORP., <br><br> Plaintiff, <br><br> v. <br><br> NATURAL GAS PIPELINE COMPANY OF AMERICA, <br><br> Defendant. | Case No. |

**COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND FOR DAMAGES
DEMAND FOR JURY TRIAL**

**NOW COMES** Petco Petroleum Corporation, ("Petco"), and Bergman Petroleum Corp. ("BPC"), Plaintiffs herein, by and through their attorneys, Brown, Hay & Stephens and Scott C. Helmholz and Rebecca Whittington, state and allege for their causes of action against Defendant, Natural Gas Pipeline Company of America ("NGPL") as follows:

**JURISDICTION AND VENUE**

1.   This Court has original jurisdiction of the subject matter of Count I by virtue of 28 U.S.C. §1331; this Court has supplemental jurisdiction of Counts II and III pursuant to 28 U S C §1367(a) and the doctrine of pendent jurisdiction because they arise out of the same nucleus of operative facts and thus form part of the same case or controversy under Article III of the United States Constitution.

2.   Venue of this action properly lies in the United States District Court for the Southern District of Illinois, Benton Division, pursuant to 28 U.S.C. §1391(b)(1), (2) and (c), and Local Rule 40.1

## COUNT I
### (INJUNCTIVE RELIEF - NATURAL GAS PIPELINE SAFETY ACT)

3       Petco is an Indiana corporation, qualified to do business in Illinois, and having its principal place of business at 108 East Ogden Avenue, Hinsdale, Illinois

4       BPC is an Illinois corporation with its principal place of business at 108 East Ogden Avenue, Hinsdale, Illinois

5       NGPL is a Delaware Corporation with its principal place of business at 701 E 22nd Street, Lombard, Illinois

6       NGPL transports natural gas produced in the gulf coast areas of Louisiana and Texas in interstate commerce by pipeline for underground storage in Illinois and elsewhere

7       In 1964 NGPL entered into an agreement with Humble Oil & Refining Co, ("Humble"), the then owner and operator of a producing oil and gas field in Fayette and Effingham Counties, Illinois, commonly known as Loudon Field, to acquire certain of Humble's rights in subsurface rock formations (the "1964 Humble-NGPL Agreement ") Loudon Field is approximately 14 miles long from southwest to northeast, and approximately 4 miles wide   A true and exact copy of the 1964 Humble-NGPL Agreement is attached hereto as Plaintiffs' Exhibit No 1

8       Thereafter, in FPC Docket No CP66-141, NGPL obtained a certificate of public convenience and necessity from the Federal Power Commission (n/k/a the Federal Energy Regulatory Commission or "FERC") to construct and operate a gas storage field pursuant to Section 7 of the Natural Gas Act, 15 U S C §717f

9       Pursuant to the 1964 Humble Agreement NGPL acquired, *inter alia*, about 100 preexisting wells in the Loudon Field some of which contained cement that was up to 23 years old

at the time, and that extended to depths of approximately 3,100 feet below the surface into a formation known as the Grand Tower Dolomite, Humble maintained its ownership of all pre-existing leasehold estates, wells and facilities in Loudon Field not specifically sold or otherwise assigned to NGPL

10    Beginning in 1967 and continuing for the ensuing thirty-six (36) years, NGPL has injected and withdrawn volumes of storage gas measured in billions of units commonly known as "scfs" or one standard cubic foot

11    NGPL compresses the "storage gas" prior to injecting it into the subsurface formation or storage reservoir, the storage reservoir "bottom hole pressure" can reach as high as 1,675 pounds per square inch absolute or "psia" when the reservoir reaches peak storage capacity just prior to onset of the winter heating season

12    Between 1967 and 1973 NGPL removed and replaced or recemented the pipe or casing in approximately 100 of the wells acquired from Humble to use for in injection and withdrawal of storage gas out of concerns that the pipe and cement in those well bores could not contain the high-pressure gas injected into the storage reservoir and that storage gas could escape and travel up the outside of those well bores where it could either reach the surface and enter the atmosphere, enter fresh water aquifers and/or wells used by nearby residents for drinking water, or enter other higher formations and reach the surface through adjacent, active oil and/or gas wells completed in those formations

13    NGPL originally intended to utilize the porosity of the Grand Tower Dolomite as its gas storage reservoir and relied upon the higher Cedar Valley Limestone, a dense limestone, to contain the gas injected into the Grand Tower

14      NGPL has, at various times between 1967 and the present, injected its storage gas into the Grand Tower Dolomite formation at pressures higher than the original or discovery pressure of the Grand Tower thereby causing fractures that eventually allowed the storage gas to migrate or travel upward into the next higher formation, the Cedar Valley Limestone

15      NGPL has, at various times between 1967 and the present, injected its storage gas into the Grand Tower and/or Cedar Valley Limestone formations at pressures higher than the original or discovery pressure of the Cedar Valley thereby causing fractures in the Cedar Valley and the next higher structure, the New Albany Shale, that eventually allowed the storage gas to migrate or travel upward into the New Albany Shale

16      As a combined result of NGPL's overpressurization of the Grand Tower and Cedar Valley formations, the stresses caused by NGPL's 36 years of cyclical injection and withdrawal of high-pressure compressed gas, as well as the possible existence of naturally occurring vertical fractures in the New Albany Shale, there is at present no effective geological structure or caprock sufficient to contain NGPL's storage gas in the Cedar Valley or the Grand Tower, and NGPL's storage gas has begun to escape the storage porosity and leak into fractures in the New Albany Shale

17      BPC succeeded to the interests of Exxon in the Loudon Field in 1992 and thereafter contracted with Petco for operation of existing wells and for further drilling and development activities

18      Many of NGPL's injection and withdrawal wells, including NGPL's Gerald Weaber # 5-D, which contains cement over 60 years old, were for many years located in close proximity to a stone and gravel quarry that regularly engaged in blasting operations

19. If a space opens between the cement around the casing and the adjacent rock formation, high pressure storage gas can escape the storage formation and travel upward in the space

20. High-pressure storage gas traveling upward in this fashion can enter higher permeable formations that Petco wells produce oil and/or native gas out of, can reach and contaminate freshwater acquifers and water wells, or even vent to the surface creating a risk of fire or explosion

21. BPC and/or Petco, by virtue of the instruments and assignments attached hereto as Plaintiffs' Exhibits 2 and 3, possess the right to explore, develop, operate and produce oil and/or gas from both the Carper Sand and the New Albany Shale in the Loudon Field

22. NGPL's high-pressure storage gas escaped the storage reservoir prior to June 15, 2000, by entering spaces between the casing and cement, spaces between the cement and geological formations opposite that cement, through cracks in the cement, or through either naturally-occurring or induced fractures above NGPL's Grand Tower Limestone storage reservoir   The escaping storage gas thus traveled upward into Petco's Carper Sand

23. On or about June 15, 2000, during the course of conducting completion operations in the Carper Sand at depths between 2,752 and 2,768 feet below the rotary rig kelly bushing in Petco's Lydia Weaber # 8 well, Petco encountered high volumes of NGPL's high-pressure storage gas

24. On or about November 7, 2002, Petco learned that NGPL's high-pressure storage gas had entered the New Albany Shale in the vicinity of Petco's Leander Wood #22 well

25. The presence of NGPL's high-pressure storage gas in the New Albany Shale, in other upper permeable strata, and the escape of the storage gas to the surface, creates a continuing danger to the public, residents of the area, and  Petco employees working on the surface

5

26   In June, 1992, storage gas escaped into a residential water well resulting in an explosion and fire at the Turpin residence

27   In May, 1998, plaintiffs John R Kabbes, et al in Effingham County Circuit Court Case No 95-L-54, obtained a jury verdict against NGPL for damages based, in part, on proof that NGPL "over-pressurized its reservoir, wells, or transmission lines" so that "NGPL's natural gas escaped from the reservoir" thereby harming Plaintiffs' quarry business

28   NGPL relies solely on noise logs and/or temperature logs to determine whether high-pressure storage gas is escaping the storage reservoir through defective cement

29   On February 22, 2003, counsel for Plaintiff mailed a notice of violation ("NOV") of Ch 601 U S C (the Natural Gas Pipeline Safety Act or "NGPSA") to the Secretary of the United States Department of Transportation in accordance with §60121(a)(1)(A), a true and exact copy of said notice of violation has been attached hereto and marked as Plaintiffs' Exhibit No 4

30   The United States Postal Service delivered the NOV to the Secretary's designate, the Office of Pipeline Safety ("OPS"), on February 26, 2003   See certified mail return receipt attached hereto as Plaintiffs' Exhibit No 5

31   As of the date of the filing of this Complaint, April 29, 2003, more than sixty (60) days have elapsed since delivery of the NOV to OPS, and the Secretary has not "begun   an administrative proceeding for the violation," nor has "the Attorney General of the United States, or the chief law enforcement officer of a State   begun   a judicial proceeding for the violation", within the meaning of §60121(a) (1) (A), (B) and (C) of NGPSA

32. In light of the allegations of Pars. 29-31, §60121(a)(1) authorizes Plaintiffs to "bring a civil action in an appropriate district court of the United States for an injunction against [NGPL] for a violation of this chapter or a regulation prescribed under this Chapter."

33. NGPL's operation of its underground gas storage facility at Loudon Field constitutes "the storage of gas, in interstate commerce" within the meaning of §60101(a)(21)(A), which in turn means that NGPL is "transporting gas" within the meaning of §60101(a)(21), thereby constituting it as an "interstate gas pipeline facility" within the meaning of §60101(a)(6) of NGPSA.

34. NGPL's continued injection of high-pressure gas into underground rock formations that cannot contain the storage gas renders its pipeline facility hazardous to life, property, or the environment within the meaning of §60112(a)(1) constitutes an operating technique that is hazardous to life or property within the meaning of 49 CFR §190.233(a) and 190.233(d)(2).

35. NGPL's reliance on noise logs and temperature surveys as the sole means to detect the escape of storage gas through defective cement bonds behind pipe constitutes an operating technique that is hazardous to life or property within the meaning of 49 CFR §190.233(a) and 190.233(d)(2).

WHEREFORE, Plaintiffs pray this Honorable Court to make and enter its Order as authorized by §60121(a)(1) of NGPSA enjoining Defendant NGPL's violations thereof, directing such corrective action as the Court deems necessary and proper, and awarding Plaintiffs their costs, and reasonable expert witness and attorneys fees pursuant to §60121(b) of NGPSA.

## COUNT II
## (DECLARATORY JUDGMENT)

36  Plaintiffs hereby restate and incorporate by reference as if fully set forth herein Paragraphs 1 through 35 of Count I above

37  Prior to July 17, 1964, Humble Oil & Refining Company ("Humble") acquired oil and gas leasehold estates pursuant to oil and gas leases covering lands located in Fayette and Effingham Counties, Illinois, with the geographic extent thereof being commonly known as the Loudon Field ("Loudon Oil and Gas Leases")  A map reflecting the general geographic area of the Loudon Field is attached hereto as Plaintiffs' Exhibit No  6

38  On July 17, 1964, Humble and NGPL entered into an agreement relating to the Loudon Oil and Gas Leases as to the Loudon Field (the "1964 Humble-NGPL Agreement")  Plaintiffs' Exhibit No  6 reflects the general geographic area of that part of the Loudon Field which was the subject of the 1964 Humble-NGPL Agreement  A copy of the 1964 Humble-NGPL Agreement is attached hereto as Plaintiffs' Exhibit No  1

39  The 1964 Humble-NGPL Agreement, among other rights, granted to NGPL the right to obtain from Humble by conveyance or assignment, to the extent that Humble had the right, the right to utilize a portion of the Loudon Oil and Gas Leases for underground storage purposes (the "Gas Storage Rights")  The Gas Storage Rights were to be limited to what NGPL and Humble described as "the Devonian reservoir" which Humble and NGPL defined as follows

> "  that formation underlying the Loudon Field (including the non-productive portions) and occurring between the subsurface depths of 2,937 feet and 3,095 feet measured from the derrick floor elevation of the Schlumberger electric log of The Carter Oil Company (now Humble) No  6-D Brauer Well located in the center of the SE¼ SE¼, Section 21, T8N, R3E, Fayette County, Illinois  The depth here set out is descriptive only and the term 'Devonian reservoir' is intended to encompass the

entire formation so identified whether conforming to said depth under particular tracts or not "

40. There are only two (2) "formation[s] underlying the Loudon Field (including the nonproductive portions) and occurring between the subsurface depths of 2,937 feet and 3,095 feet measured from the derrick floor elevation of the Schlumberger electric log of the No 6-D Brauer Well " referred to in the 1964 Humble-NGPL Agreement language quoted in Par 39 the Cedar Valley Limestone and the Grand Tower Dolomite

41. Pursuant to the 1964 Humble-NGPL Agreement, Humble later transferred the Gas Storage Rights to NGPL pursuant to the following documents

- Assignment of oil and gas leases dated August 1, 1966, recorded in Book 367, at page 462, in the Effingham County Clerk and Recorder's Office

- Assignment of oil and gas leases dated August 1, 1966, recorded in Book 535, at page 47, in the Fayette County Clerk and Recorder's Office

- Overriding royalty and mineral deed dated August 1, 1966, recorded in Book 361, at page 585, in the Effingham County Clerk and Recorder's Office

- Overriding royalty and mineral deed dated August 1, 1966, recorded in Book 535, at page 31, in the Fayette County Clerk and Recorder's Office

- Storage easement dated August 1, 1966, recorded in Book 535, at page 27, in the Fayette County Clerk and Recorder's Office

("NGPL's Acquisition Documents")

42. NGPL's Acquisition Documents were limited in scope to "the Devonian reservoir" as defined in that portion of the 1964 Humble-NGPL Agreement set out in Par 39 above All other rights with respect to the Loudon Oil and Gas Leases, except for NGPL's Gas Storage Rights and

9

other incidental rights with respect to injection and certain overriding royalty interests, were reserved by Humble

43  Through name change and mergers, Humble became known as Exxon Corporation ("Exxon")

44  By Assignment and Bill of Sale dated June 1, 1992, and recorded in Book 886, at page 1, in the Fayette County Clerk and Recorder's Office, and Supplemental Assignment dated April 15, 1993, and recorded in Book 926, at page 60, in the Fayette County Clerk and Recorder's Office, Exxon assigned to BPC all of its interest in the Loudon Oil and Gas Leases ("BPC's Acquisition Documents")  The interest assigned would have been subject only to NGPL's Acquisition Documents and a certain agreement between Humble and NGPL dated September 1, 1971, which agreement does not pertain to the issues herein

45  Petco operates oil and gas wells in the Loudon Field pursuant to the Loudon Oil and Gas Leases  Said operations are on behalf of BPC pursuant to a contractual relationship between the Petco and BPC

46  After the recording of NGPL's Acquisition Documents in 1966 and prior to BPC's Acquisition Documents in 1992, NGPL acquired purported gas storage easements from individuals and entities owning interest in lands corresponding to the Loudon Field ("Gas Storage Easements")  Any rights acquired by NGPL pursuant to the Gas Storage Easements would be subject to and inferior to the Loudon Oil and Gas Leases which were prior in time and right.

47  The Loudon Oil and Gas Leases contain no limitations as to depth or formation  Various geological structures and formations underlie the surface of the lands described in the Loudon Oil and Gas Leases  These structures and formations underlying the Loudon Field include "the Devonian

reservoir" as defined by NGPL and Humble in the 1964 Humble-NGPL Agreement  These structures and formations also include the New Albany Shale which has the potential to produce gas (the "New Albany Shale")

48  The New Albany Shale was described and included within BPC's Acquisition Documents but was not described and included within NGPL's Acquisition Documents

49  Humble and/or its predecessors in title acquired the right to explore, develop, operate and produce oil and/or gas from the New Albany Shale in Loudon Field and transferred said right to BPC pursuant to BPC's Acquisition Documents in 1992

50  NGPL has asserted a right to utilize the New Albany Shale in some manner in conjunction with its Gas Storage Rights and/or the Gas Storage Easements  Such asserted right by NGPL purports to be exclusive to NGPL and to the exclusion of BPC  Such assertion by NGPL lacks any basis in law or fact

51  The rights of BPC to explore, develop, operate, and produce oil and/or gas from the New Albany Shale are superior to and controlling as to any Gas Storage Rights or Gas Storage Easements of NGPL with respect to said formation  Any Gas Storage Rights or Gas Storage Easements of NGPL cannot serve as a basis to prevent BPC from exercising it superior rights to explore, develop, operate, and produce gas from the New Albany Shale

52  A controversy exists between BPC/Petco and NGPL as to their respective rights in the New Albany Shale as to the Loudon Field  This Court should declare the rights of the parties for purposes of settling the controversy

53  This Court should declare that BPC's and Petco's rights to explore, develop, operate, and produce gas from the New Albany Shale as to the Loudon Field are superior to any right of

NGPL and that NGPL has no basis or right to prevent BPC or Petco from such exploration, development, operations, or production

WHEREFORE, Plaintiffs pray that this Honorable Court make and enter its Order declaring, adjudging and decreeing that (a) Plaintiffs' right to explore, develop, operate and produce oil and/or gas from the New Albany Shale as to the Loudon Field is superior to any right of Defendant and that Defendant has no basis or right to prevent Plaintiffs from such exploration, development, operations, or production, (b) that Plaintiffs are entitled to such other relief as the Court may deem just and equitable, and (c) that Plaintiffs are entitled to receive their costs herein

## COUNT III
## (DAMAGES-LOST NATIVE GAS AND OIL RESERVES)

54   Plaintiffs repeat and incorporate by reference as if fully set forth herein Pars 1 - 53 of Counts I and II above

55   NGPL's operations together with the occurrence of naturally occurring fractures in the New Albany Shale in Loudon Field has allowed storage gas to enter the New Albany Shale rendering it impossible for Plaintiffs to exercise their superior rights to explore for and produce native gas and/or oil in place in the New Albany Shale

56   NGPL's failure to maintain the integrity of its storage reservoir and prevent its storage gas from entering the New Albany Shale constitutes a continuing trespass in and upon the New Albany Shale that precludes Plaintiffs from exploring for and producing native gas reserves therein valued in excess of $1,000,000 00

57   Plaintiffs further possess the exclusive right to explore for and produce native gas and/or oil from the Carper Sand and every formation in Loudon field above the New Albany Shale

58   The presence of NGPL's high-pressure storage gas in the New Albany Shale precludes Plaintiffs from exploring for or producing native gas and oil reserves in the Carper Sand in Loudon Field valued in excess of $ 1,000,000 00

WHEREFORE, Plaintiffs pray for judgment against NGPL for their damages in excess of $2,000,000 00, for their costs and expenses incurred herein, and such other relief as the Court may deem just and equitable

Respectfully submitted,

PETCO PETROLEUM CORPORATION
and BERGMAN PETROLEUM CORP.,
Plaintiffs

By _____
One of Their Attorneys

Scott C Helmholz
Registration No 6186488
Brown, Hay & Stephens
205 South Fifth Street, Suite 700
P O Box 2459
Springfield, Illinois 62705-2459
(217) 544-8491

Rebecca Whittington, Esq
930 W Walnut Street
Carbondale, IL 62901
(618) 549-8599

May 3 2003\kj\l \NBARTELS\WPWIN60\SCHCLIEN\PETCO\00 L-21\DISTRICT\COMPLAIN 12