UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PETCO PETROLEUM CORPORATION and
BERGMAN PETROLEUM CORPORATION,

       Plaintiffs,

    v.

NATURAL GAS PIPELINE COMPANY OF
AMERICA,

       Defendant.

Case No. 03-cv-4086-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Natural Gas Pipeline Company of America's ("NGPL") motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 49). Plaintiffs Petco Petroleum Corporation ("Petco") and Bergman Petroleum Corporation ("BPC") have responded to the motion (Doc. 59), and NGPL has replied to that response (Doc. 60). The Court also considers NGPL's motion to reconsider (Doc. 76) the Court's order denying leave to supplement its motion to dismiss (Doc. 75). Petco and BPC have responded to the motion to reconsider (Doc. 77).

**I.      Motion to Reconsider (Doc. 76)**

On May 11, 2005, NGPL asked the Court for leave to supplement the pending motion to dismiss the Second Amended Complaint. It sought to file a supplemental brief arguing that this case is moot and to submit additional exhibits in support of that position. On May 25, 2005, the Court denied the motion finding that submission of exhibits was inappropriate in light of the fact that the pending motion to dismiss was pursuant to Rule 12(b)(6), which ordinarily does not allow consideration of matters outside the pleadings. NGPL seeks reconsideration of this ruling.

It appears that either the Court misunderstood NGPL's original request or that NGPL has

misunderstood the consequences of the Court's order.  The Court's order was not intended to foreclose NGPL from filing a separate motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Indeed, subject matter jurisdiction is an issue that can be raised at any time, and if a party is aware of a jurisdictional question, a deliberate failure to raise the issue is sanctionable.. *BEM I, LLC v. Anthropologie, Inc.*, 301 F.3d 548, 551-52 (7th Cir. 2002);  *see* Fed. R. Civ. P. 12(h)(3).  On the contrary, the Court intended to indicate simply that raising those issues in the pending Rule 12(b)(6) motion to dismiss for failure to state a claim, as opposed to in a new Rule 12(b)(1) motion, was inappropriate.  The Court's order did not restrict NGPL from filing a new motion to dismiss based on subject matter jurisdiction notwithstanding the Court's refusal to allow supplementation of the pending motion to dismiss.  For these reasons, the Court will deny NGPL's motion to reconsider (Doc. 76) and will allow it a reasonable time in which to file a Rule 12(b)(1) motion to dismiss Count I for lack of jurisdiction.  In the meantime, the Court will reserve ruling on the Rule 12(b)(6) motion to dismiss as it relates to Count I, including the issue of whether consideration of a letter from a United States Department of Transportation ("DOT") attorney to the plaintiffs' counsel can be properly considered in deciding that motion.

## II.     Motion to Dismiss (Doc. 49)

### A.     Alleged Facts

In its prior order granting NGPL's motion to dismiss the original complaint, the Court set forth the general facts alleged in this controversy.  They have not substantially changed since that order, to the Court will simply quote the relevant alleged facts from that order, indicating with brackets and ellipses any substantive changes from the prior order:

The Court will set forth the alleged facts in very general terms, for that is all that is required to decide this motion.  This case centers on the various parties' respective rights to and activities in subterranean geological formations beneath a parcel of land in Fayette and Effingham Counties called Loudon Field.  Approximately 40 years ago, NGPL acquired rights from Humble Oil and Refining Company ("Humble") to use a subterranean geological formation under Loudon Field called the Devonian Reservoir.  Humble's rights to use other formations beneath the Loudon Field were ultimately transferred to BPC.  NGPL also acquired gas storage easements from numerous individuals with rights in Loudon Field.  As a result, NGPL and BPC own rights to different subterranean layers underlying Loudon Field.

NGPL and BPC agree that the Devonian Reservoir contains two formations known as the Grand Tower Dolomite and the Cedar Valley Limestone, the formation directly above the Grand Tower Dolomite.  They agree that NGPL has the rights to those formations.  NGPL and BPC do not agree, however, about whether the Devonian Reservoir also includes the New Albany Shale, the formation directly above the Cedar Valley Limestone.  Believing it has rights to the New Albany Shale, BPC employs Petco to operate wells and conduct drilling and development activities there and in other subterranean formations underlying Loudon Field.

With the appropriate approvals and certifications, in the late 1960s, NGPL began using the Grand Tower Dolomite [and the Cedar Valley Limestone] to store highly pressurized natural gas. . . .  NGPL would alternately inject highly pressurized gas into the reservoir and then withdraw it.  The high pressure and the stresses caused from repeatedly injecting and withdrawing the pressurized gas caused the Grand Tower Dolomite [and Cedar Valley Limestone] storage reservoir to fracture and the pressurized gas to escape into the . . . New Albany Shale [and other layers] where Petco operates wells.  The gas is also able, through improperly capped wells or those with degraded or defective cement, to leak into other subterranean layers, to contaminate freshwater aquifers and water wells and to vent to the surface such that it creates a risk of fire or explosion.  NGPL monitors for leaks of its pressurized gas through defective cement caps solely using noise and temperature logs.  [NGPL does not, however, use storage gas inventory audit or management techniques common in the industry and cannot, therefore, discover in a timely manner the escape of gas stored from the reservoir.]

The migration of the gas into the New Albany Shale [and the Carper Sand formation immediately above the New Albany Shale,] and into the wells Petco operates for BPC interferes with . . . Petco's operations.  This, along with the leaks, contaminations and venting noted above pose a danger to the public and to Petco employees working in the area.

B.      Procedural History

Count I of the Second Amended Complaint asserts a claim under the Natural Gas

Pipeline Safety Act ("NGPSA"), 49 U.S.C. § 60101, *et seq.*  It alleges that NGPL's failure to

contain the gas in the Devonian Reservoir renders the reservoir "unsafe" and constitutes a

"hazardous leak."  It claims that NGPL's failure to repair, replace or remove the "unsafe"

Devonian Reservoir from service or to repair the "hazardous leak" is a violation of regulations

promulgated under the NGPSA.  Compl. ¶ ¶ 43 & 45.  Count II asks for a declaratory judgment

that BPC's and Petco's rights to the New Albany Shale are superior to NGPL's rights.  Count III

is a claim for trespass based on the migration of NGPL's gas into the New Albany Shale and the

Carper Sand and on its interference with BPC's and Petco's operations in those geological

formations and others above it.  Original jurisdiction in federal court is based on the federal

question presented in Count I and on diversity jurisdiction.

NGPL has filed a motion to dismiss Count I on the grounds that BPC and Petco have not

stated a claim for a violation of the NGPSA as required in a private party suit under the act.

Specifically, it argues that the NGPSA does not govern underground geological gas storage

formations like the Devonian Reservoir.  It also asks the Court to abstain from exercising

jurisdiction over Counts II and III.  As the Court is reserving ruling on Count I pending

resolution of subject matter jurisdiction issues, the Court turns directly to Counts II and III.

C.      Analysis

NGPL asks the Court to abstain from exercising diversity jurisdiction over Counts II

based on *Brillhart v. Excess Insurance Company*, 316 U.S. 491 (1942), and over Count III based

on *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  *Brillhart*

and *Colorado River* both allow the Court to abstain from hearing a case on the basis that the

4

issues are currently being litigated before a state court, although they apply to two different types of causes of action.  As noted earlier, Count II seeks a declaratory judgment as to who has superior rights to the New Albany Shale, and Count III is a claim for trespass based on the migration of NGPL's gas.

        1.      Count II:  *Brillhart* Abstention

The Court finds that abstention is appropriate for Count II, a declaratory judgment claim seeking to declare that BPC has superior rights to the New Albany Shale.  In *Wilton v. Seven Falls Company*, 515 U.S. 277, 289 (1995), the Supreme Court confirmed that abstention decisions in declaratory judgment actions are governed by *Brillhart v. Excess Insurance Company*, 316 U.S. 491 (1942).  *Brillhart* held that a federal court has discretion to decline to exercise jurisdiction over a declaratory judgment claim when another proceeding in state court would fully adjudicate all the matters in controversy in that claim.  *Brillhart*, 316 U.S. at 494-95.  *Brillhart* stated:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.  Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart* at 495.  When deciding whether to exercise jurisdiction over a declaratory judgment claim, a federal court should consider a variety of factors, including but not limited to

> whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.  This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there.  The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.*;  *accord Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995).

NGPL points to three state court actions in various postures at the time its brief was filed, one of which deals directly with the New Albany Shale issues:  *Natural Gas Pipeline Company of America v. Petco Petroleum Corporation and Bergman Petroleum Corporation*, case no. 02 CH 48 ("Wood # 22 Action").  In the Wood # 22 Action, NGPL asks a state court to decide whether Petco and BPC's activities in the New Albany Shale constitute a trespass on property owned by NGPL and to declare that NGPL owns the New Albany Shale.  In that case, the state court entered a temporary restraining order in favor of NGPL directing Petco and BPC to refrain from conducting certain well activities in the New Albany Shale and other subterranean formations.  That action was still pending at the time NGPL filed its brief in support of its motion to dismiss in this case.[1]

The Wood # 22 Action is between the same parties as this lawsuit and involves precisely the same question at issue in Count II of this lawsuit.  It appears that a final judgment in the Wood # 2 Action would fully adjudicate all the matters at issue in Count II and that the state court, being fairly far along in its consideration of the matters and having reviewed the pertinent issues in conjunction with NGPL's motion for a temporary restraining order, is in a better position to efficiently resolve the controversy.  For these reasons, the Court will exercise its discretion under *Brillhart* to decline to exercise jurisdiction over Count II.

---

[1]NGPL claims that the issue of who has superior rights to the New Albany Shale was also heard and decided in *Natural Gas Pipeline Company of America v. Petco Petroleum Corporation and Bergman Petroleum Corporation*, case no. 00 L 21 (the "Weaber # 8 Action").  Although such issues may have actually been decided in that litigation, it is not apparent from the documents NGPL has attached to its motion to dismiss.  That document only refers to the presence of NGPL's gas in the Carper Sand.  As a consequence, the Court cannot say that the Weaber # 8 action involves the same issues as Count II of the case at bar.

2.      Count III:  *Colorado River* Abstention

The Court finds that abstention is warranted with respect to Count III, the plaintiffs'

claim for trespass based on the migration of NGPL's gas into the New Albany Shale and Carper

Sand.  As the Court noted in ruling on NGPL's prior motion to dismiss, the decision whether to

abstain from Count III in light of parallel state court proceedings is governed by *Colorado River*

*Water Conservation District v. United States*, 424 U.S. 800 (1976), which establishes a more

stringent standard for abstention, either by staying an action or dismissing it, than *Brillhart*'s.

*See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).  *Colorado*

*River* noted the general rule that "the pendency of an action in the state court is no bar to

proceedings concerning the same matter in the Federal court having jurisdiction," and "the

virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."

*Colorado River*, 424 U.S. at 817 (internal quotations omitted).  It concluded,

> Abstention from the exercise of federal jurisdiction is the exception, not the rule.
> The doctrine of abstention, under which a District Court may decline to exercise
> or postpone the exercise of its jurisdiction, is an extraordinary and narrow
> exception to the duty of a District Court to adjudicate a controversy properly
> before it.  Abdication of the obligation to decide cases can be justified under this
> doctrine only in the exceptional circumstances where the order to the parties to
> repair to the State court would clearly serve an important countervailing interest.

*Id*. at 813 (internal quotations omitted).

The Court must answer two questions when deciding whether to abstain under *Colorado*

*River*.  First, it must ask whether the state action is parallel to the federal action.  *Clark v. Lacy*,

376 F.3d 682, 685 (7th Cir. 2004).  "Suits are parallel if 'substantially the same parties are

litigating substantially the same issues simultaneously in two fora.'"  *AAR Int'l, Inc. v. Nimelias*

*Enters.*, 250 F.3d 510, 518 (7th Cir. 2001) (quoting *Schneider Nat'l Carriers, Inc. v. Carr*, 903

F.2d 1154, 1156 (7th Cir. 1990)).  Suits can be parallel without being identical.  *AAR Int'l*, 250

7

F.3d at 518.  The relevant inquiry is "whether there is a 'substantial likelihood' that the [state court] litigation 'will dispose of all claims presented in the federal case.'"  *Id.* (quoting *Day v. Union Mines Inc*., 862 F.2d 652, 656 (7th Cir. 1988)).

If the Court determines the state and federal court actions are parallel, the Court must then evaluate ten non-exclusive factors to determine if abstention would be "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Colorado River*, 424 U.S. at 817 (brackets in original).  Those factors are:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Clark*, 376 F.3d at 685;  *accord AXA Corp. Solutions v. Underwriters Reins. Corp*., 347 F.3d 272, 278 (7th Cir. 2003) (internal quotations omitted).

NGPL argues that all relevant factors weigh in favor of abstention.  Petco and BPC, on the other hand, argue that this case is not parallel to the state court actions NGPL cites and that therefore *Colorado River* does not apply.  Alternatively, they argue that the *Colorado River* factors militate against abstention.

First, the Court will summarize the relevant state court actions.

- In the Wood # 22 Action, NGPL asks the state court to decide whether Petco and BPC's activities in the New Albany Shale constitute a trespass on property owned by NGPL and to declare that NGPL owns the New Albany Shale.

- In the Weaber # 8 Action, NGPL asks the state court to decide whether Petco and BPC have trespassed into the Devonian Reservoir and unlawfully taken NGPL's gas that was

stored there.  In a counterclaim, BPC brings an action for trespass based on the migration of NGPL's gas out of the Devonian Reservoir and into the Carper Sand it owns.

•  In *Natural Gas Pipeline Company of America v. Petco Petroleum Corp.*, case no. 99 L 27 ("Sloan # 6 Action"), NGPL again sued Petco alleging a trespass into the Devonian Reservoir and conversion of the gas stored there.  NGPL prevailed at trial, and the court has determined that BPC is liable for the damage award against Petco.

•  In an Effingham County Circuit Court case no. 95-L-54 ("Kabbes Action"), a jury found NGPL responsible for damages that resulted from overpressurizing its reservoir, wells and transmission lines.

The Court finds that, taken as a whole, the state court actions provide an adequate parallel forum for completely and promptly adjudicating the questions at issue in Count III. Count III involves essentially three theories: (1) that NGPL's gas has migrated into BPC's formations because of NGPL's improperly sealed wells, (2) that NGPL's gas has migrated into the New Albany Shale because of NGPL's overpressurizing gas in the Devonian Reservoir and (3) that NGPL's gas has migrated into the Carper Sand and other formations undeniably owned by BPC because of NGPL's overpressurizing gas in the Devonian Reservoir.  Between the Weaber # 8 Action and the Wood # 22 Action, including the Wood # 22 counterclaims, it is likely that all of these issues will be resolved, if they have not already been resolved by the Sloan # 6 Action or the Kabbes Action.  That the state court actions focus on areas immediately surrounding certain wells does not diminish the value of those decisions to determining the issues in Count III of this litigation.  It is clear that there is a substantial likelihood that resolution of the aforementioned state court actions will effectively decide who owns the New Albany Shale and who is responsible for the presence of NGPL's gas in formations owned by BPC.  Since the state court actions are substantially the same as those in Count III, they are sufficiently parallel to invoke *Colorado River*, and the Court now considers the ten-factor test.

The Court has considered the relevant factors and has determined that abstention under

*Colorado River* is appropriate.  All parties agree that the first and ninth factors – jurisdiction over the property and the availability of removal – are inapplicable.  The Court will address each of the remaining factors in turn.

The second factor, inconvenience of the federal forum, weighs slightly in favor of abstention.  The federal court is approximately 78 miles away from Loudon Field, while the state court is in the same county as Loudon Field and many witnesses.  While 78 miles is not a tremendous inconvenience, it is some inconvenience and should be considered in favor of abstention.

The desirability of avoiding piecemeal litigation also weighs heavily in favor of abstention.  This Court's consideration of the issues in Count III will surely duplicate the efforts of state courts considering those same issues and may result in contrary results.  Allowing the state courts to resolve the issues without injecting the possibility of an inconsistent federal judgment would preserve the integrity and authority of the judicial process.

The Court is mindful that all of the relevant state court actions cited by the parties were commenced before this action, including the counterclaims filed in the Wood # 22 Action.  This factor weighs in favor of abstention.

All parties admit that state law solely governs Count III, which weighs in favor of allowing state courts to resolve the issues.

There is no indication that the state court actions are unable to protect Petco and BPC's federal rights.  The state court is able to offer relief identical to the federal court, so this factor also weighs in favor of abstention.

The state court actions have progressed further than the federal action.  For example, in the Weaber # 8 Action, trial has already been held, and in the Wood # 22 Action, the state court

has already had an occasion to consider the merits of the action in connection with the motion for a temporary restraining order. This case, on the other hand, has lingered in the pleading stage since it was filed and now must await further briefing on jurisdictional issues. This factor weighs strongly in favor of abstention.

All parties agree that both state and federal courts have concurrent jurisdiction over Count III. Therefore, this factor is neutral, as the litigation is able to proceed properly in all fora.

Finally, the Court is unable to express any definite opinion on whether any claim in this case is of a vexatious or contrived nature, so this factor is neutral.

In sum, after weighing all the relevant factors, the Court finds that NGPL has overcome the presumption that the Court should exercise jurisdiction over Count III. The Court is convinced that abstention with respect to Count III would reflect wise judicial administration and would promote conservation of judicial resources and comprehensive disposition of litigation. For these reasons, the Court will abstain from deciding Count III. However, instead of dismissing Count III entirely, the Court will stay the action pending final resolution of the Weaber # 8 Action, the Wood # 22 Action, the Sloan # 6 Action and the Kabbes Action. To the extent that any issues in this case remain unresolved by the final judgments in those cases, the Court may entertain those portions of Count III at that time.

## III.    Conclusion

For the foregoing reasons, the Court

- **DENIES** NGPL's motion for reconsideration (Doc. 76);

- **ORDERS** that NGPL shall file a motion to dismiss based on subject matter jurisdiction on or before September 16, 2005;

- **RESERVES RULING in part**, **GRANTS in part** and **DENIES in part** the motion to dismiss (Doc. 6). The Court reserves ruling on the motion to the extent that it addresses

Count I.  The motion is granted to the extent it seeks to dismiss Count II, the Court **ABSTAINS** from exercising jurisdiction over Count II pursuant to *Brillhart*, and Count II is **DISMISSED without prejudice**.  The motion is denied to the extent that it seeks to dismiss Count III;

•        **ABSTAINS** from exercising jurisdiction over Count III pursuant to *Colorado River*;

•        **STAYS** Count III pending final resolution of the Weaber # 8 Action, the Wood # 22 Action, the Sloan # 6 Action and the Kabbes Action, including all appeals therefrom;

•        **DIRECTS** Petco and BPC to file a notice within 30 days of the final resolution of the aforementioned state court actions indicating whether any issues in Count III remain unresolved by the state court actions; and

•        **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  August 17, 2005**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

12