UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PETCO PETROLEUM CORPORATION and BERGMAN PETROLEUM CORPORATION,<br><br>   Plaintiffs,<br><br>   v.<br><br>NATURAL GAS PIPELINE COMPANY OF AMERICA,<br><br>   Defendant. | Case No. 03-cv-4086-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Natural Gas Pipeline Company of America's ("NGPL") motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction (Doc. 91). Plaintiffs Petco Petroleum Corporation ("Petco") and Bergman Petroleum Corporation ("BPC") have responded to the motion (Doc. 104), and NGPL has replied to that response (Doc. 109). The Court also considers the remaining portions of NGPL's motion to dismiss pursuant to Rule 12(b)(6) (Doc. 49), to which Petco and BPC have responded (Doc. 59), and to which NGPL has replied (Doc. 60).

**I.      Motion to Dismiss for Lack of Jurisdiction (Doc. 91)**

   A.      Standard for Dismissal

A defendant can challenge a court's subject matter jurisdiction under Rule 12(b)(1) in two ways. It may make a facial challenge to the sufficiency of the complaint's jurisdictional allegations as a matter of law, in which case, as with a Rule 12(b)(6) motion, all well-pleaded factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *United States v.*

*Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); 2 James Wm. Moore *et al.*, *Moore's Federal Practice*, § 12.30[4], at 12-38 to 12-39 (3d ed.).

  A defendant may also challenge the facts on which the complaint relies to allege jurisdiction, in which case the plaintiff is not entitled to have his allegations taken as true or to have any inferences drawn in his favor. *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999); 2 James Wm. Moore *et al.*, *Moore's Federal Practice*, § 12.30[4], at 12-38 to 12-40 (3d ed. 2000). To resolve a challenge to the facts, a court may receive and weigh evidence outside the allegations in the complaint to determine if it has subject matter jurisdiction over the case. *Sapperstein*, 188 F.3d at 855-56. In any case, the plaintiff has the burden of proving that subject matter jurisdiction exists. *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

  In the case at bar, the defendant challenges the facts on which the plaintiff relies to establish subject matter jurisdiction. Specifically, NGPL argues that the claim in Count I either does not amount to a case or controversy or, alternatively, is a case or controversy that is now moot. Thus, Petco and Bergman must present evidence sufficient to establish that the claim in Count I presents a case or controversy that is not now moot.

  B. <u>Summary of Arguments</u>

  Count I attempts to assert a claim under the Natural Gas Pipeline Safety Act ("NGPSA"), 49 U.S.C. § 60101, *et seq*. The facts alleged in support of Count I are set forth generally in an order dated August 17, 2005, and need not be repeated in this order. Essentially, Count I alleges that NGPL's failure to contain the gas in the Devonian Reservoir renders the reservoir "unsafe" and constitutes a "hazardous leak." It claims that NGPL's failure to repair, replace or remove the "unsafe" Devonian Reservoir from service or to repair the "hazardous leak" is a violation of

regulations promulgated under the NGPSA.  2d Am. Compl. ¶ 44.

NGPL argues that the Court does not have jurisdiction over Count I for two reasons.  The first is that the Department of Transportation ("DOT"), the agency charged with implementing the NGPSA, does not have jurisdiction to regulate underground storage reservoirs and its associated wells, so the plaintiffs have no legal basis to file a citizens suit under the NGPSA.  In support of this argument, NGPL points to a May 20, 2003, letter from Elaine E. Joost, Chief Counsel of Research and Special Programs Administration at the DOT,  ("Joost letter"), stating, "The pipeline safety regulations contained in Title 49 C.F.R. Part 192 do not regulate underground storage formations."  Alternatively, NGPL argues that even if Petco and BPC could file a citizen suit under the NGPSA, such a claim would be moot because the DOT has determined that NGPL has not violated any NGPSA regulation.  In support of this argument, NGPL points to a March 24, 2005, DOT report ("McMaster report") finding the Loudon gas storage field pipelines "to be well-maintained and identif[ying] no serious concerns."

The plaintiffs argue that the NGPSA, by its plain terms, governs underground storage as a component of "transportation of gas" and that the DOT's failure to acknowledge its authority over the subject matter cannot deprive the Court of jurisdiction to hear a citizen suit under the NGPSA.  They also argue that the DOT's inspection cannot render this dispute moot because the inspection did not address the items of concern set forth in Count I.

  C. <u>Analysis</u>

The Court finds that the plaintiffs have failed as a matter of law to allege a violation of the NGPSA and that, because such a violation is a jurisdictional prerequisite for a citizen suit under the act, the Court does not have jurisdiction to hear this case.

1.   Jurisdictional Requirement

The Court begins with the provision of the NGPSA that authorizes private causes of action:

> A person may bring a civil action in an appropriate district court of the United States for an injunction against another person . . . for a violation of this chapter or a regulation prescribed or order issued under this chapter.

49 U.S.C. § 60121(a)(1). Such provisions authorizing citizen suits establish jurisdictional requirements. *See, e.g., Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987) (holding that statute authorizing citizen suits against those "alleged to be in violation" of the Clean Water Act ("CWA") conferred no jurisdiction over cases based on wholly past violations); *Save Our Community v. EPA*, 971 F.2d 1155, 1162 (5th Cir. 1992) ("Without the violation of either (1) an effluent standard or limitation under the CWA, or (2) an order issued with respect to these standards and limitations, the district court lacks jurisdiction to act."). Therefore, for the Court to have jurisdiction over a NGPSA citizen suit, the suit must be for a violation of either the act, a regulation implemented under the authority of the act, or an order issued under the act. The Second Amended Complaint only attempts to allege violations of regulations, so the Court need not address potential violations of the act itself or orders pursuant to the act.

2.   Applicability of Regulations

Petco and BPC fail to allege any violation of any regulation prescribed under the NGPSA. The Second Amended Complaint attempts to allege a violation of two regulations implemented under the act:

> (b) Each segment of pipeline that becomes unsafe must be replaced, repaired, or removed from service.

    (c)  Hazardous leaks must be repaired promptly.

49 C.F.R. § 192.703 (b) & (c). Both of these regulations are in Subpart M of 49 U.S.C. Part 192, a section of the Code of Federal Regulations that "prescribes minimum requirements for maintenance of pipeline facilities." 49 C.F.R. § 192.701.

    It is clear, however, as a matter of law that the plaintiffs' allegations, even if true, do not amount to a violation of those regulations. The Court reaches this conclusion after examination of the text and structure of the NGPSA and its implementing regulations and the Joost letter.

    3.    <u>Text and Structure: Limitation to "Pipeline Facilities"</u>

    The text and structure of the NGPSA and the regulations implemented under its authority suggest that they do not apply to underground gas storage reservoirs and their associated wells. The Court first turns to 49 C.F.R. § 192.701, which limits the application of Subpart M, in general, and 49 C.F.R. § 192.703 (b) and (c), in particular, to "pipeline facilities." It must follow that if the Devonian Reservoir is not a "pipeline facility" then § 192.703 (b) and (c) can have no application to it. On the other hand, if it is a "pipeline facility," then the Court must look to the language of § 192.703 (b) and (c) themselves to see if they apply to underground storage fields.

    The Court begins its analysis of whether underground storage fields are "pipeline facilities" by looking at the plain meaning of the applicable statute and regulations. When interpreting a statute, a court "must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose." *United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) (further quotations omitted), *cert denied sub nom Fleischli v. United States*, 125 S. Ct. 1999 (May 2, 2005). "[W]ords used in statutes must be given their ordinary and plain meaning," *Zeigler Coal Co. v. Director, Office of Workers' Comp. Programs*, 326 F.3d 894, 900 (7th Cir.

5

2003), and if the language is plain, that meaning governs, *Nestle Holdings, Inc. v. Central States, Se. & Sw. Areas Pension Fund*, 342 F.3d 801, 805 (7th Cir. 2003).

In this case, a plain reading of the NGPSA and its implementing regulations indicates that an underground storage field could be a "pipeline facility." In an amazing display of circularity, the NGPSA defines a "pipeline facility" to include "a gas pipeline facility," § 60101(a)(18), which it then further defines as a "a *pipeline, a right of way, a facility, a building, or equipment* used in transporting gas or treating gas during its transportation," § 60101(a)(3) (emphasis added); *see* 49 C.F.R. § 192.3. If an underground storage field is any of these things, it may be a "pipeline facility."[1]

An underground storage field is not a "pipeline," which the NGPSA's implementing regulations define as "all parts of those physical facilities *through which gas moves* in transportation," 49 C.F.R. § 192.3 (emphasis added), because gas does not "move through" an underground storage field but instead, by definition, is stored in it. An underground storage field also is not covered by the common and ordinary understanding of a right of way, a building or equipment. The question then is whether an underground storage field is a "facility."

Neither the NGPSA nor its implementing regulations define "facility," so the Court turns to the dictionary to ascertain the plain meaning of "facility." *See Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000). The Court has consulted several dictionaries with varying results. Some dictionaries define facility to include an element of creation, that is, that a facility is something that one actively creates where it did not exist before. *See, e.g., Webster's II New Riverside University Dictionary* 460 (1984) ("Something created to serve a particular function");

---

[1]It is clear that an underground storage field is used in "transporting gas," which the NGPSA defines to include "the storage of gas." 49 U.S.C. § 60601(a)(21)(A).

*The American Heritage Dictionary of the English Language* (4th ed. 2000) ("Something created to serve a particular function: hospitals and other health care facilities."). Under such definitions, underground storage fields would not be "facilities" because they were not created for storage in the way that a metal tank is created for storage; they are preexisting formations into which someone decided to place gas for storage. On the other hand, some dictionaries omit any reference to the element of creation and define "facility" as simply the physical means for accomplishing something. *See, e.g., Oxford English Dictionary* (2d ed. 1989) ("the physical means for doing something; freq. with qualifying word, e.g. educational, postal, retail facilities"); *Cambridge Dictionary of American English at* http://dictionary.cambridge.org/define.asp?key=facility*2+0&dict=A ("a place, esp. including buildings, where a particular activity happens"). An underground storage reservoir would be covered by the definitions that omit the creative element. As a consequence of these varying definitions, it is ambiguous whether an underground storage field is a "facility" as the NGPSA uses that term.

To the extent that the use of the word "facility" is ambiguous, the Court looks at "the entire text and structure of the statute to determine its meaning." *Miscellaneous Firearms*, 376 F.3d at 712 (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). The interpretation should be consistent with the structure and context of the statute as a whole and should not render other provisions inconsistent, meaningless or superfluous. *Id.*

The Court finds that the entire text and structure of the NGPSA itself and its implementing regulations are inconsistent with interpreting "facility" to include underground storage facilities. There is evidence from the text and structure of Subpart M that the DOT did not intend it to apply to underground storage fields. For example, § 192.703 appears to apply

primarily to "segments of pipeline," which an underground storage field is definitely not. Moreover, the remaining portions of Subpart M do not address even tangentially underground storage fields, to which numerous measures should surely apply to ensure their safety. This is persuasive evidence that underground storage reservoirs and their associated wells are not "pipeline facilities."

    4.  Joost Letter

  This conclusion is bolstered by the Joost letter, which states that Part 192 does not govern underground gas storage reservoirs and their associated wells. It is true that the Joost letter was not promulgated in the exercise of authority expressly delegated by Congress; it was not the result of the quintessential types of Congressional delegation – an adversarial proceeding or notice-and-comment rulemaking. It is therefore not binding on the courts under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001); *Christenson v. Harris Co.*, 529 U.S. 576, 587 (2000). However, it is the sort of informal agency opinion that is entitled to some respect according to its persuasiveness. *Mead*, 533 U.S. at 228; *Skidmore v. Swift & Co.*, 323 U.S. 134, 140-41 (1944). "'The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Mead*, 533 U.S. at 228 (quoting *Skidmore*, 323 U.S. at 140). Furthermore, an agency's opinion as to the proper interpretation of an ambiguous regulation should be given deference. *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *see Christenson*, 529 U.S. at 588.

  The Court finds the Joost letter persuasive generally as to the applicability of Part 192

and specifically as to the applicability of Subpart M of Part 192 to underground storage reservoirs and their associated wells. Although the Joost letter does not set forth a thorough analysis of the question at issue, the Court believes it fails to do so because the issue is well-settled and needs no further explanation. The DOT views Part 192 as inapplicable, and no further explanation is necessary. Furthermore, there is no indication that the Joost letter is inconsistent with the DOT's position in any other situation. Finally, the Court notes that the DOT, as drafter of the regulations in question, is the most authoritative source as to the intended reach of the regulations. As explained above, Subpart M's applicability to underground gas storage reservoirs is ambiguous, and the Joost letter should therefore be given deference. *Auer*, 519 U.S. at 461. Even if DOT had the authority to regulate underground gas storage reservoirs and associated wells under the NGPSA, it is clear that it did not intend to do so by enacting Part 192. For these reasons, the Court finds that the Joost letter is persuasive evidence that the DOT does not view Part 192 as applying to underground gas storage reservoirs and their associated wells.

     5.   Text and Structure:  Specific Regulations

Even if Part 192 had applied to underground storage reservoirs and their associated wells, it is clear that the two particular provisions at issue in this case do not.

The Court first looks at 49 C.F.R. § 192.703(b). That section states, "Each segment of pipeline that becomes unsafe must be replaced, repaired, or removed from service." As the Court has noted above, underground storage fields do not meet Subpart M's definition of "pipeline" because gas does not move *through* them, so *a fortiori*, they cannot be a "segment of pipeline." For this reason, Petco and BPC have failed to allege anything that amounts to a violation of § 192.703(b).

As for 49 C.F.R. § 192.703(c), the result is the same. That section states, "Hazardous leaks must be repaired promptly." It is true that its plain terms do not limit its application to "segments of pipeline" or any other specific types of "pipeline facilities." However, the NGPSA gives special significance to the word "hazardous," which renders § 173.703(c) inapplicable to the present situation. The act and its implementing regulations give the Secretary of the DOT the authority to declare a facility "hazardous" to life, property or the environment after it has afforded the facility's operator notice and an opportunity for a hearing. *See* 49 U.S.C. § 60112(a); 49 C.F.R. § 190.233. It is an unreasonable interpretation of § 192.703(c) to believe that when it refers to "hazardous" leaks, it is referring to any leak other than one the Secretary has explicitly declared hazardous. Interpreting the regulation to allow any individual to sue when in his or her opinion a leak is hazardous would render the NGPSA's procedural safeguards superfluous. Petco and BPC have failed to allege anything that violates § 192.703(c).

Because Petco and BPC have not alleged anything that, even if true, would amount to a violation of a regulation implemented under the authority of the NGPSA, the Court does not have jurisdiction to hear this case under the citizen suit provision of the act and will therefore dismiss Count I for lack of jurisdiction.

In light of this ruling, the Court need not address the question of mootness in light of the McMaster report.

### II.     Motion to Dismiss for Failure to State a Claim (Doc. 49)

The Court will deny as moot the remaining portions of this motion. It notes in passing, however, that had it had jurisdiction to decide Count I, it would have dismissed it for failure to state a claim under Rule 12(b)(6) for the same reasons set forth in this order, excluding consideration of the Joost letter.

**III.     Conclusion**

For the foregoing reasons, the Court finds that it lacks jurisdiction over the citizen suit attempted to be pled in Count I. It therefore **GRANTS** the motion to dismiss Count I for lack of jurisdiction (Doc. 91) and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case. The Court **DENIES as moot** the pending portions of the motion to dismiss under Rule 12(b)(6) (Doc. 49). The Court notes that Count III, the only pending claim in this case, has been stayed pending resolution of various state court actions.

**IT IS SO ORDERED.**
**DATED:  January 18, 2006**

                                           s/ J. Phil Gilbert
                                           **J. PHIL GILBERT**
                                           **DISTRICT JUDGE**