UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PETCO PETROLEUM CORPORATION and BERGMAN PETROLEUM CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>NATURAL GAS PIPELINE COMPANY OF AMERICA,<br><br>Defendant. | Case No. 03-cv-4086-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiffs Petco Petroleum Corporation and Bergman Petroleum Corporation (by its successor Loudon Energy Corporation) for reconsideration (Doc. 124) of the Court's January 18, 2006, order (Doc. 110) dismissing Count I, a claim under the Natural Gas Pipeline Safety Act ("NGPSA"), 49 U.S.C. § 60101, *et seq.*, for lack of jurisdiction. *See Petco Petroleum Corp. v. Natural Gas Pipeline Co. of Am.*, 410 F. Supp. 2d 715 (S.D. Ill. 2006). Natural Gas Pipeline Company of America ("NGPL") has responded to the motion (Doc. 127), and the plaintiffs have replied to that response (Doc. 130).

### I. Background

This case centers on the various parties' respective rights to and activities in subterranean geological formations beneath a parcel of land in Fayette and Effingham Counties called Loudon Field. NGPL has rights to the lower two layers (Grand Tower Dolomite and Cedar Valley Limestone, both in the Devonian Reservoir), and uses those formations to store natural gas. BPC has rights to the higher-up Carper Sand, but the parties dispute who has what rights in the New Albany Shale, the layer between the Cedar Valley Limestone and the Carper Sand. The plaintiffs allege NGPL's gas storage practices have cause the reservoir to fracture and leak gas

into the New Albany Shale and the Carper Sand and onto the land surface. They also allege NGPL's improperly capped wells are leaking gas into those layers. NGPL counters that it was the plaintiffs' drilling in the Carper Sand that caused the reservoir fracture and the migration of NGPL's gas. Specifically, in Count I, the plaintiffs allege that NGPL violated regulations promulgated under the NGPSA requiring segments of pipelines that become unsafe to be replaced, repaired or removed from service, 49 C.F.R. § 192.703 (b), and requiring hazardous leaks to be repaired promptly, 49 C.F.R. § 192.703(c).

In its January 18, 2006, order, the Court found that the underground natural gas storage reservoirs and their associated wells are not governed by the cited regulations because those reservoirs are not "pipeline facilities," the only places to which those regulations applied. *See* 49 C.F.R. § 192.701. In drawing this conclusion, the Court gave persuasive weight to a letter from Elaine E. Joost, Chief Counsel of Research and Special Programs Administration at the United States Department of Transportation ("DOT"), the federal agency charged with promulgating regulations to implement the NGPSA. The letter states, "The pipeline safety regulations contained in Title 49 C.F.R. Part 192 do not regulate underground storage formations." Additionally, the Court further held that the specific regulations in issue do not by their terms apply to underground natural gas storage reservoirs.

The plaintiffs ask the Court to reconsider the January 18, 2006, order in light of *Colorado Interstate Gas Company v. Wright* ("*CIG*"), 707 F. Supp. 2d 1169 (D. Kan. 2010). Independently of *CIG*, the plaintiffs ask the Court to reconsider its conclusion that an underground natural gas storage reservoir is not a "segment of pipeline" as that phrase is used in 49 C.F.R. § 192.703 (b).

NGPL notes that *CIG* is a district court decision that is not binding precedent for this

Court and, accordingly, represents no change in law warranting reconsideration of the January 18, 2006 order. It also argues that *CIG* is inapplicable because it dealt with the issue of federal preemption, not whether a citizen can bring a suit under the NGPSA alleging noncompliance with federal pipeline safety standards.

**II.     Analysis**

"A court has the power to revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983)); Fed. R. Civ. P. 54(b) (providing an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). The decision whether to reconsider a previous ruling in the same case is governed by the law of the case doctrine. *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006). The law of the case is a discretionary doctrine that creates a presumption against reopening matters already decided in the same litigation and authorizes reconsideration only for a compelling reason such as a manifest error or a change in the law that reveals the prior ruling was erroneous. *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008); *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007).

The plaintiffs ask the Court to reconsider its opinion in light of *Colorado Interstate Gas Company v. Wright* ("*CIG*"), 707 F. Supp. 2d 1169 (D. Kan. 2010), presumably because it believes the Court made a manifest error of law in concluding underground natural gas storage reservoirs are not "pipeline facilities." In *CIG*, a federal district court struck down state laws requiring underground natural gas storage reservoir operators to perform certain monitoring and

3

reporting relating to those reservoirs. *Id.* at 1189. It reasoned that Congress preempted state regulation of underground natural gas storage reservoir safety when it passed the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.*, giving the Federal Energy Regulatory Commission ("FERC," or its predecessor the Federal Power Commission) exclusive jurisdiction over the sale and transportation of natural gas in interstate commerce and the facilities natural gas companies used to accomplish those functions. *Id.* at 1177. It noted that "transportation" included "storage" of natural gas in underground reservoirs and that FERC, accordingly, exercised its jurisdiction to regulate such reservoirs via its certification and authorization process. *Id.* at 1178.

The *CIG* court rejected the argument that Congress did not intend to preempt state regulation of underground natural gas storage reservoir safety by giving exclusive jurisdiction to FERC because Congress also delegated safety issues to the DOT in the NGPSA. *Id.* at 1181. The court found Congress intended to create a "comprehensive federal regulatory scheme governing safety standards on interstate transportation of natural gas," in which DOT assisted FERC in creating and enforcing safety standards applicable once a facility is operational. *Id.* 1181-84.

The plaintiffs in the case at bar point to the *CIG* court's discussion of the NGPSA provision expressly preempting state regulation of "interstate pipeline facilities." *Id.* at 1184. There, the court determined that underground natural gas storage reservoirs were "interstate pipeline facilities" because they were facilities used to store gas, one of the functions involved in "transporting gas" in interstate commerce. *Id.* at 1184-85 (citing 49 U.S.C. §§ 60101(a)(3), (6), (18), (19) & (21)). The *CIG* court found untenable the notion that Congress did not intend the NGPSA to cover underground natural gas storage reservoirs, common at the time the law was enacted. *Id.* at 1186. The *CIG* court's discussion is inconsistent with this Court's conclusion

that underground natural gas storage reservoirs are not "pipeline facilities."

While *CIG* may call into question this Court's determination that underground natural gas storage reservoirs are not covered by Subpart M of 49 C.F.R. Part 192 *because* that part applies only to "pipeline facilities," it does not undermine the Court's ultimate conclusion that the plaintiffs have failed to plead a violation of 49 C.F.R. § 192.703 (b) or (c). *CIG* closely examines the relationship between the NGA and the NGPSA and makes a persuasive argument that "pipeline facilities" include underground natural gas storage reservoirs. However, it does not speak at all to whether regulations relating to underground natural gas storage reservoirs are contained within Subpart M of 49 C.F.R. Part 192. The Court has explained in its earlier order that Subpart M simply does not contain the types of regulations that would apply to underground storage reservoirs. The Joost letter, which states, "The pipeline safety regulations contained in Title 49 C.F.R. Part 192 do not regulate underground storage formations," continues to support this holding. The most *CIG* holds is that the DOT may regulate underground natural gas storage reservoir safety under the NGPSA, not that it has done so in Subpart M.

More importantly, *CIG* is not inconsistent with the Court's conclusion that the plaintiffs have failed to specifically plead violations of 49 C.F.R. § 192.703 (b) ("Each segment of pipeline that becomes unsafe must be replaced, repaired, or removed from service.") or (c) ("Hazardous leaks must be repaired promptly."). *CIG* therefore presents no occasion to revisit that conclusion.

Nevertheless, the plaintiffs ask the Court to reconsider its conclusion that an underground natural gas storage reservoir is not a "segment of pipeline" as that phrase is used in 49 C.F.R. § 192.703 (b). It notes that the Supreme Court has stated, "Underground gas storage facilities are a necessary and integral part of the operation of piping gas from the area of production to the

5

area of consumption." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 295 n. 1 (1988) (internal quotations omitted). While this may be true, it does not convert an underground natural gas storage reservoir, which may under *CIG* be a *pipeline facility*, into a pipeline itself or a "segment of pipeline."

One final matter is worthy of mention. In their reply, the plaintiffs argue that they need not point to a specific regulation violated by NGPL in order to state a claim. They note the statutory provision empowering the DOT Secretary to determine that a pipeline facility is hazardous, *see* 49 U.S.C. § 60112(a), and argue that since the Secretary has declined to investigate certain allegedly hazardous activities in Loudon Field, they may sue without pointing to a specific violation. This argument has no merit. Wholly unlike the common law negligence claim at issue in the case the plaintiffs cite, *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010), a citizen suit claim under the NGPSA can only be brought "for a violation of this chapter or a regulation prescribed or order issued under this chapter." 49 U.S.C. § 60121(a)(1).[1] If the plaintiffs can point to no specific portion of the chapter, a regulation or an order they believe the defendant has violated, they have not alleged a cause of action. The mere allegation that "something smells fishy" will not do.

## III.    Conclusion

For the foregoing reasons, the Court **DENIES** the plaintiffs' motion for reconsideration (Doc. 124) of the Court's January 18, 2006, order. While some of the Court's reasoning

---

[1]In *Bausch*, the Court of Appeals held that an injured plaintiff did not have to cite violation of "concrete or product-specific" regulations regarding a medical product in order to state a common law negligence claim. It did not hold the plaintiff did not have to cite *any* regulation in order to state a claim; it merely held that allegation of violation of a *general* regulation was sufficient. *Bausch*, 630 F.3d at 555.

supporting its ultimate conclusion may be questionable, the final result remains sound.

**IT IS SO ORDERED.**
**DATED: May 10, 2011**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**