UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PETCO PETROLEUM CORPORATION and
BERGMAN PETROLEUM CORPORATION,

    Plaintiffs,

    v.

NATURAL GAS PIPELINE COMPANY OF
AMERICA,

    Defendant.

Case No. 03-cv-4086-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of defendant Natural Gas Pipeline Company of America ("NGPL") to dismiss Count III, a trespass claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) and, alternatively, for judgment on the pleadings on Count III pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 132). Plaintiffs Petco Petroleum Corporation ("Petco") and Bergman Petroleum Corporation ("BPC") (by its successor Loudon Energy Corporation) have responded to the motion (Doc. 140), and NGPL has replied to that response (Doc. 141).

**I.    Background**

This case centers on the various parties' respective rights to and activities in subterranean geological formations beneath a parcel of land in Fayette and Effingham Counties called Loudon Field. NGPL has rights to the lower two layers (Grand Tower Dolomite and Cedar Valley Limestone, both in the Devonian Reservoir), and uses those formations to store natural gas. BPC has rights to the higher-up Carper Sand formation. The plaintiffs allege NGPL's highly pressurized gas storage practices have caused the reservoir to fracture and leak storage gas into the New Albany Shale (a layer immediately above the Cedar Valley Limestone and below the

Carper Sand) and the Carper Sand and onto the land surface. They also allege NGPL's improperly capped wells are leaking gas into those layers. This migration, they claim, has prevented them from exercising their rights to explore for and produce native natural gas and oil in the New Albany Shale and Carper Sand. NGPL counters that it was the plaintiffs' drilling in the Carper Sand that caused the reservoir fracture and the migration of NGPL's gas.

In Count III, the only claim remaining in this case, the plaintiffs allege that NGPL's negligent operations in combination with natural fractures in the New Albany Shale have allowed NGPL's storage gas to migrate into the New Albany Shale and Carper Sand, which has, in turn, prevented the plaintiffs from exercising their rights to explore for and produce native gas and oil there. The plaintiffs claim the migration of NGPL's storage gas constitutes a trespass for which they are entitled to damages.

In August 2005, the Court abstained from hearing Count III under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending the resolution of various state court actions involving the same question at issue in Count III: Did NGPL commit a trespass when its storage gas migrated into the New Albany Shale and Carper Sand? The last of those actions terminated on November 3, 2010, and now NGPL asks the Court to dismiss Count III on the basis of *res judicata* because it believes the trespass question was answered in its favor in the state court actions. It also asks the Court to dismiss Count III because the plaintiffs cannot recover on a claim of trespass where they did not yet possess the native gas and oil for which they seek damages. The Court first turns to the question of *res judicata* because it provides a complete resolution of Count III.

## II.     *Res Judicata*

The doctrine of *res judicata*, also known as claim preclusion, prevents relitigation of

Carper Sand) and the Carper Sand and onto the land surface. They also allege NGPL's improperly capped wells are leaking gas into those layers. This migration, they claim, has prevented them from exercising their rights to explore for and produce native natural gas and oil in the New Albany Shale and Carper Sand. NGPL counters that it was the plaintiffs' drilling in the Carper Sand that caused the reservoir fracture and the migration of NGPL's gas.

In Count III, the only claim remaining in this case, the plaintiffs allege that NGPL's negligent operations in combination with natural fractures in the New Albany Shale have allowed NGPL's storage gas to migrate into the New Albany Shale and Carper Sand, which has, in turn, prevented the plaintiffs from exercising their rights to explore for and produce native gas and oil there. The plaintiffs claim the migration of NGPL's storage gas constitutes a trespass for which they are entitled to damages.

In August 2005, the Court abstained from hearing Count III under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending the resolution of various state court actions involving the same question at issue in Count III: Did NGPL commit a trespass when its storage gas migrated into the New Albany Shale and Carper Sand? The last of those actions terminated on November 3, 2010, and now NGPL asks the Court to dismiss Count III on the basis of *res judicata* because it believes the trespass question was answered in its favor in the state court actions. It also asks the Court to dismiss Count III because the plaintiffs cannot recover on a claim of trespass where they did not yet possess the native gas and oil for which they seek damages. The Court first turns to the question of *res judicata* because it provides a complete resolution of Count III.

**II.     *Res Judicata***

The doctrine of *res judicata*, also known as claim preclusion, prevents relitigation of

matters that were fully litigated in an earlier suit that resulted in a judgment on the merits. *Groesch v. City of Springfield*, 635 F.3d 1020, 1029 (7th Cir. 2011). Because of the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect that the court rendering the judgment would give it. *Haber v. Biomet, Inc.*, 578 F.3d 553, 556 (7th Cir. 2009); *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). Thus, when examining whether an Illinois court judgment bars a federal lawsuit because of *res judicata*, the Court looks to the preclusive effect an Illinois court would give the judgment in question. *Groesch*, 635 F.3d at 1029; *Licari*, 298 F.3d at 666. Under Illinois law, *res judicata* applies if the prior decision (1) was a final judgment on the merits rendered by a court of competent jurisdiction, (2) involved the same parties or their privies, and (3) constituted the same cause of action as the current suit. *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001); *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992); *Groesch*, 635 F.3d at 1029. In this case, the plaintiffs challenge whether the prior state court litigation constituted the same cause of action as Count III in this case.

Illinois uses a transactional approach to determining whether different claims constitute the same cause of action for *res judicata* purposes. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998); *see Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 637 (7th Cir. 2004). Under the transactional approach, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 703 N.E.2d at 891; *accord Rodgers v. St. Mary's Hosp.*, 597 N.E.2d 616, 621 (Ill. 1992) (*res judicata* bars suit if "the same facts were essential to maintain both actions" or if "a single group of operative facts gives rise to the assertion of relief"). As a corollary to this rule, Illinois observes the doctrine of

3

merger and bar which precludes the relitigation not only of claims that were *actually* litigated but also claims that *could have been* litigated.  *People ex rel. Burris*, 602 N.E.2d at 825; *River Park*, 703 N.E.2d at 889 *see Garcia*, 360 F.3d at 639.

The defense of *res judicata* is properly raised in a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010).

A.   State Court Judgments

The state court judgments on which NGPL's motion rests occurred in *Natural Gas Pipeline Company of America v. Petco Petroleum Corp.* in the Circuit Court of the Fourth Judicial Circuit, Fayette County, Illinois (Case No. 00-L-21), and in the Appellate Court of Illinois for the Fifth District (Case Nos. 5-07-0050 & 5-07-0051).  That case began when NGPL sued Petco and BPC alleging they were negligent in drilling an oil and gas well in the Loudon Field – the Lydia Weaber # 8 ("LW 8") well – that damaged the NGPL's storage reservoir at issue in this case and caused NGPL's storage gas to migrate into the New Albany Shale and Carper Sand.

Petco and BPC filed a counterclaim alleging, among other things, that NGPL was negligent in allowing its pressurized storage gas to migrate out of the reservoir.  They claim that, as a result of this negligence, NGPL's storage gas "escaped into, invaded and overwhelmed" the Carper Sand.  It charged that the migration of storage gas constituted a trespass by NGPL on Petco and BPC's mineral rights that caused them to lose the ability to produce native gas and oil from the Carper Sand and to lose substantial reserves of oil and gas.

1.   Circuit Court Judgment

The Circuit Court specifically found there was no storage gas in the Carper Sand

immediately before Petco and BPC conducted a fracturing treatment[1] at LW 8 on June 16, 2000, but that there was gas in the Carper Sand immediately afterwards. Opinion and Order at 3, No. 00-L-21 (Cir. Ct. May 10, 2006) (Doc. 133-3). The Circuit Court further found that after the fracturing treatment there was direct communication between LW 8 and the storage reservoir such that when storage gas was produced at LW 8, it was immediately replaced by more storage gas. *Id.* In light of these findings, the Circuit Court concluded that Petco and BPC's fracturing treatment caused the communication and subsequent migration of storage gas out of the reservoir and into the Carper Sand. *Id.* at 4. Accordingly, it found Petco and BPC were negligent in (1) drilling and completing LW 8 so as to cause a channel for storage gas migration, (2) fracturing into or otherwise interfering with the reservoir, (3) producing LW 8 and causing NGPL's storage gas to migrate out of the reservoir, (4) failing to inspect LW 8 and take remedial action to prevent the migration of NGPL's storage gas out of the reservoir, (5) failing to notify and cooperate with NGPL to prevent the migration of the storage gas out of the reservoir, and (6) diverting a substantial amount of NGPL's storage gas out of the reservoir. *Id.* at 4-5.

The Circuit Court further found Petco and BPC liable for breach of covenant, breach of contract and conversion of NGPL's storage gas that it had actually produced from LW 8 but not for the storage gas that had migrated into the Carper Sand but was not produced by a well. *Id.* at 6-7. Accordingly, it awarded damages for the value of the storage gas produced by LW 8 and ordered Petco and BPC to turn over LW 8 to NGPL so NGPL can attempt to repair the integrity of the reservoir. *Id.* at 7-8.

---

[1] A fracturing treatment is a method obtaining oil from a formation by injecting fluid into a well under high pressure to crack the area being targeted, thus increasing the well's ability to retrieve oil. *See Natural Gas Pipeline*, Rule 23 Order at 6 (Doc. 133-2).

5

As for Petco and BPC's counterclaim for trespass, the Circuit Court denied that claim in light of its finding that the storage gas migration was due to Petco and BPC's negligence and not an intentional or negligent intrusion by NGPL. *Id.* at 9. It further noted that Illinois law does not allow Petco or BPC to recover any damages based on the loss of underground gas or oil before it has taken possession of that gas or oil, which it had not done in this case. *Id.*

2. Appellate Opinion

The Illinois Appellate Court affirmed the Circuit Court's decision, including the finding that Petco and BPC's fracturing activities had caused the fracture into the reservoir that allowed NGPL's gas to migrate into the Carper Sand. *Natural Gas Pipeline Co. of Am. v. Petco Petroleum Corp.*, Nos. 5-07-0050 & 5-07-0051, 938 N.E.2d 522 (Ill. App. Ct. Sept. 29, 2010) (Rule 23 Order at 29-30) (Doc. 133-2). The Appellate Court declined to review the Circuit Court's decision on Petco and BPC's trespass counterclaim because Petco and BPC had not raised the issue in a post-trial motion such that it was preserved for appeal. *Id.* at 32. Thus, the Circuit Court's order represents the final judgment as to that issue.

B. Analysis

The Circuit Court's opinion in *Natural Gas Pipeline* bars Count III in this case on the grounds of *res judicata* because the state judgment is final and involved the same parties and the same claim at issue in this case. As noted above, the parties do not dispute the finality or the identical parties requirement. They focus on the same claim requirement.

In their state court counterclaim, Petco and BPC charged that NGPL's negligence caused its storage gas to migrate out of the reservoir and to trespass on their mineral rights in the Carper Sand. Similarly, in this case, Petco and BPC allege NGPL's negligence caused the migration of NGPL's storage gas from the reservoir into the Carper Sand and New Albany Shale, trespassing

6

on Petco and BPC's rights. The transactions and events at the center of each suit are virtually identical and clearly arise from the same group of operative facts – NGPL's gas storage practices and management of its reservoir – even though the specific acts of negligence varied slightly in each case. Thus, the two cases present the same cause of action for *res judicata* purposes. Consequently, the Circuit Court's judgment that NGPL did not trespass on Petco and BPC's rights when its gas migrated from the reservoir is *res judicata* for the trespass claim pled in Count III of this case.

Petco and BPC argue that the *Natural Gas Pipeline* judgment did not decide the same cause of action because that litigation was limited to the vicinity of LW 8 and did not apply to the entire Loudon Field and its hundreds of gas wells, as does the case at bar. As a preliminary matter, the Court does not believe Petco and BPC's counterclaim was so limited. While it is true that the state court complaint focused on the drilling of LW 8, the counterclaim did not. It starts with storage gas migration in the vicinity of LW 8, but alleges broadly that NGPL was negligent even before the LW 8 fracturing treatment for failing "to properly monitor the Devonian reservoir so as to prevent the escape of pressurized gas from said Reservoir" (Doc. 133-1 at ¶ 9(A)). It further complains generally that gas from the Devonian Reservoir "escaped into, invaded and overwhelmed the Carper formation." (Doc. 133-1 at 5, ¶ 10; *see also* Doc. 133-1 at 3-4, ¶¶ 10-14). "Overwhelming" is hardly a geographically limited allegation. The storage gas migration, Petco and BPC allege, caused them to lose "the ability to produce oil and native Carper gas from the Carper formation and [to lose] substantial reserves of both oil and gas" (Doc. 113-1 at 4, ¶ 12). None of these crucial allegations are limited to the LW 8 area. Thus, it appears that the scope of Petco and BPC's counterclaim was as broad as Count III of this ligitation. The Circuit Court's rejection of that claim therefore bars Count III in this case.

Even if the *Natural Gas Pipeline* counterclaim was limited in scope to storage gas migration in the vicinity of LW 8, broader claims asserting additional damage from NGPL's common course of conduct in maintaining the integrity of its reservoir could have been litigated in the trespass counterclaim. All such claims would have arisen from a single group of operative facts and circumstances – NGPL's uniform methods of storing its gas and managing the unitary reservoir. Petco and BPC could have sought damages throughout the entire Loudon Field based on the same acts and practices they allege constituted mismanagement of NGPL's reservoir. Thus, the doctrine of merger and bar prevents those claims from being relitigated in this case. To hold otherwise could potentially give Petco and BPC infinite bites at the proverbial apple depending on how geographically small they could carve their claims.

Because the Court has resolved this case on the basis of *res judicata*, there is no need to evaluate NGPL's arguments for dismissal under Rule 12(b)(6) for failure to state a claim.

## III. Conclusion

For the foregoing reasons, the Court **GRANTS** NGPL's motion to dismiss Count III on the basis of *res judicata* (Doc. 132), **DISMISSES** Count III with prejudice and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: June 3, 2011**

                                          s/ J. Phil Gilbert
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**